*No. 23-11056*

IN THE

# United States Court of Appeals

FOR THE ELEVENTH CIRCUIT



GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY,

*Plaintiffs-Counter Defendants-Appellants,*

*against*

GLASSCO INC.,

*Defendant-Counter Claimant-Appellee,*

JASON WILEMON, JOHN BAILEY, ANDREW VICTOR,

*Defendants-Appellees.*

───────────────

*On Appeal from the United States District Court*
*for the Middle District of Florida*
*Honorable Kathryn Kimball Mizelle*
*Case No. 8:19-cv-01950-KKM-JSS*

## BRIEF FOR
## PLAINTIFFS-COUNTER DEFENDANTS-APPELLANTS

Max Gershenoff
John P. Marino
Lindsey R. Trowell
Kristen L. Wenger
RIVKIN RADLER LLP
*Attorneys for*
  *Plaintiffs-Counter Defendants-Appellants*
Riverplace Tower
1301 Riverplace Blvd., Suite 1000
Jacksonville, Florida 32207
904-792-8948
max.gershenoff@rivkin.com
john.marino@rivkin.com
kristen.wenger@rivkin.com

**No. 23-11056**
**Government Employees Ins. Co. v. Glassco, Inc.**

**CERTIFICATE OF INTERESTED PERSONS**
**AND CORPORATE DISCLOSURE STATEMENT**

Plaintiffs/Appellants Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company state the following pursuant to Federal Rule of Appellate Procedure 26.1(a) and Eleventh Circuit Local Rule 26.1-2(c):

GEICO Corporation is the parent and sole owner of Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company. GEICO Corporation is an indirectly wholly owned subsidiary of Berkshire Hathaway, Inc., which is a publicly traded corporation that is traded on the New York Stock Exchange (NYSE) as BRK.A.

The following parties have been further identified that may have an interest in the outcome of this appeal:

Anthony & Partners, LLC – counsel for Defendant/Appellee Wilemon, Jason

Anthony, John – counsel for Defendant/Appellee Wilemon, Jason

Austin & Laurato, PA – counsel for Defendant/Appellee Glassco, Inc.

Austin, Hannah – counsel for Defendant/Appellee Glassco, Inc.

Bailey, John – Defendant/Appellee

Berkshire Hathaway, Inc. (BRK.A) – indirect parent of GEICO Corporation

Bernstein, Yonatan – counsel for Plaintiffs/Appellants

i

Gaugush, Simon Alexander – counsel for Trowell, Lindsey

Gazda, Lydia Marie – counsel for Defendant/Appellee Wilemon, Jason

GEICO Corporation – parent of Plaintiffs/Appellants

GEICO General Insurance Company – Plaintiff/Appellant

GEICO Indemnity Co. – Plaintiff/Appellant

Germain, Michael Benjamin – counsel for Defendant Victor, Andrew

Gershenoff, Max – counsel for Plaintiffs/Appellants

Ghekas, Andrew James – counsel for Defendant Wilemon, Jason

Glassco, Inc. – Defendant/Appellee

Government Employees Ins. Co. – Plaintiff/Appellant

Grilli, Peter John – Mediator

Laurato, Michael Vincent – counsel for Defendant Glassco, Inc.

Law Offices of Howard Levine – counsel for Defendant Bailey, John

Levine, Howard Jerome – counsel for Defendant Bailey, John

Marino, John P. – counsel for Plaintiffs/Appellants

Mizelle, Kathryn Kimball – USDC Judge

Murrow, John Claude – Third Party Custodian

Rivkin Radler LLP – counsel for Plaintiffs/Appellants

Smith, Gambrell & Russell, LLP – counsel for Plaintiffs/Appellants

Trowell, Lindsey R. – counsel for Plaintiffs/Appellants

Victor, Andrew – Defendant/Appellee

Wenger, Kristen L. – counsel for Plaintiffs/Appellants

Wilemon, Jason – Defendant/Appellee

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs/Appellants Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Company (collectively "Plaintiffs/Appellants", "Appellants", or "GEICO") believe that oral argument would be beneficial to the Court if the Court has questions or concerns beyond the scope of the briefing.

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................vii

CERTIFICATE OF INTERESTED PERSONS  AND
CORPORATE DISCLOSURE STATEMENT ......................................i

STATEMENT REGARDING ORAL ARGUMENT...........................iv

STATEMENT REGARDING JURISDICTION .................................xi

STATEMENT OF THE ISSUES....................................................1

STATEMENT OF THE CASE........................................................3

    I.    Statement of Facts and Summary of the
        Proceedings Below ...............................................................3

        A.    The Relevant Statutory Framework...................................3

                1.    Comprehensive Insurance Coverage and
                      Claims for Glass Services .......................................3

                2.    The Florida Motor Vehicle Repair Act....................3

                3.    Florida Appellate Courts Have Held that Repair
                      Shops that Violate the Repair Act May Not
                      Collect on Their Charges, Even in Quantum Meruit ..............7

        B.    GEICO's Claims and Allegations Against the Defendants ..............9

        C.    The Defendants' Motions to Dismiss and the District
             Court's Dismissal of GEICO's Repair Act Claim........................12

        D.    The Parties' Summary Judgment Motions, and the
             District Court's Summary Judgment Order...................15

        E.    GEICO's Motion for Reconsideration or for
             Certification Pursuant to 28 U.S.C. § 1292(b) ...............20

        F.    GEICO's Motion to Amend and the District Court's
             Entry of Final Judgment ...............................................23

G.    Standards of Review on This Appeal ...........................................25

SUMMARY OF ARGUMENT ........................................................................25

ARGUMENT ...................................................................................................28

I.    Because the Florida Supreme Court has not Interpreted
the Relevant Provisions of the Repair Act, Florida District
Court of Appeals Decisions are Controlling...........................................28

II.    Florida District Courts of Appeal Have Held that Repair
Shops that Violate the Repair Act May Not Collect on
Their Charges, Even in Quantum Meruit, and Even From
a Non-"Customer" ...................................................................................28

III.    The District Court Erred in Dismissing  Plaintiffs' Repair
Act Claim at the Pleading Stage..............................................................30

IV.    The District Court Erred in Granting the Defendants
Summary Judgment, and Dismissing GEICO's RICO,
FCRCPA, FDUTPA, Fraud, Unjust Enrichment, and
Declaratory Judgment Claims, to the Extent that Those
Claims were Based on Defendants' Failure to Comply
with the Repair Act, or Misrepresentations Regarding Their Compliance
with the Repair Act and Entitlement to Payment ..................................34

V.    The District Court Erred in Granting the Defendants
Summary Judgment, and Dismissing GEICO's Fraud-Based
Claims Against Bailey, Wilemon, and Victor, for Lack
of Scienter ...............................................................................................41

VI.    The District Court Erred in Granting the Defendants Summary
Judgment, and Dismissing GEICO's RICO and FCRCPA Claims  for
Lack of Continuity...................................................................................43

VII.    The District Court Erred in Denying Plaintiffs' Own
Motion for Summary Judgment...............................................................50

CONCLUSION .................................................................................................52

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

<u>1616 Sunrise Motors, Inc. v. A-Leet Leasing of Florida,</u>
    547 So. 2d 267 (Fla. 4th DCA 1989) .......................................... 9, 20, 24, 28, 35

<u>Allstate Ins. Co. v. Lyons,</u>
    843 F. Supp. 2d 358 (E.D.N.Y. 2012)................................................. 43

<u>Allstate Ins. Co. v. Vizcay,</u>
    826 F.3d 1326 (11th Cir. 2016) ........................................................ 38

<u>Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.,</u>
    2021 U.S. App. LEXIS 30660 (11th Cir. 2021)................................... 49

<u>Blanchard v. State Farm Mut. Auto. Ins. Co.,</u>
    903 F.2d 1398 (11th Cir. 1990)........................................................ 27

<u>Blue Cross & Blue Shield v. Kamin,</u>
    876 F.2d 543 (6th Cir. 1989) .......................................................... 48

<u>Cafaro v. Zois,</u>
    693 Fed. Appx. 810 (11th Cir. 2017) ............................................... 41

<u>Cont'l Cas. Co. v. Cura Grp., Inc.,</u>
    2005 U.S. Dist. LEXIS 51116 (S.D. Fla. 2005)................................... 43

<u>CVLR Performance Horses, Inc. v. Wynne,</u>
    524 Fed. Appx. 924 (4th Cir. 2013) ................................................. 43

<u>Daedalus Cap. LLC v. Vinecombe,</u>
    625 F. App'x 973 (11th Cir. 2015) ................................................... 46

<u>Daedalus Capital LLC v. Vinecombe,</u>
    2014 U.S. Dist. LEXIS 186298 (M.D. Fla. 2014)............................... 46

<u>Ferrell v. Durbin,</u>
    311 Fed. Appx. 253 (11th Cir. 2009) ............................................... 42

<u>Git R Done Concrete Cutting, LLC v. Swinsons Car Care Center, Inc.,</u>
    22 Fla. L. Weekly Supp. 226a (Fla. 9th Jud. Cir. July 30, 2014) ...................... 9

Gonzalez v. Tremont Body & Towing, Inc.,
    483 So. 2d 503 (Fla. 3d DCA 1986) ..................................................................... 8

Gov't Emples. Ins. Co. v. Martineau,
    M.D. Fla. Case No. 8:19-cv-01382-MSS-SPF ............................................. 38, 40

Gov't Emples. Ins. Co. v. Palm Wellness Ctr., LLC,
    2021 U.S. Dist. LEXIS 232075 (M.D. Fla. 2021) .............................................. 38

Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care Inc.,
    2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019), aff'd 2021 U.S.
    App. LEXIS 32949 (11th Cir. 2021) ..................................................................... 50

H. J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989) ............................................................................................ 47

Jackson v. BellSouth Telecomms.,
    372 F.3d 1250 (11th Cir. 2004) ......................................................................... 46

Kearney v. Foley & Lardner, LLP,
    607 Fed. Appx. 757 (9th Cir. 2015) ................................................................... 48

Magnifico v. Villanueva,
    783 F.Supp.2d 1217 (S.D. Fla. 2011) ................................................................. 44

Osteen v. Morris,
    481 So. 2d 1287 (Fla. 5th DCA 1986) .................................................. 7, 13, 35

Perez-Priego v. Bayside Carburetor & Ignition Corp.,
    633 So. 2d 1190 (Fla. 5th DCA 1994) .................................. 8, 13, 28, 32, 35, 50

Platinum Props. Inv'r Network, Inc. v. Sells,
    2020 U.S. Dist. LEXIS 107052 (S.D. Fla. 2020) .................................. 43, 45, 46

Raymar Constr. Co. v. Lopez-Soto,
    547 So. 2d 282 (Fla. 2d DCA 1989) ............................................................. 9, 29

Reynolds v. Gorilla Motors, Inc.,
    11 Fla. L. Weekly Supp. 1047a (Fla. 15th Jud. Cir. August 31,
    2004) ...................................................................................................................... 9

Rubinstein v. Keshet Inter Vivos Trust,
    2018 U.S. Dist. LEXIS 185666 (S.D. Fla. 2018) .............................................. 49

Safari Tours, Inc. v. Pasco,
    255 So. 3d 415 (Fla. 3d DCA 2018) ...................................................... 8

SEC v. Watkins Pencor, LLC,
    810 Fed. Appx. 823 (11th Cir. 2020) ................................................... 41

Shapiro v. Associated Int'l Ins. Co.,
    899 F.2d 1116 (11th Cir. 1990) ........................................................... 27

Smelter v. S. Home Care Servs., Inc.,
    904 F.3d 1276 (11th Cir. 2018) ........................................................... 24

Stansell v. Revolutionary Armed Forces of Colombia,
    771 F.3d 713 (11th Cir. 2014)............................................................. 24

Starling v. R.J. Reynolds Tobacco Co.,
    845 F. Supp. 2d 1215 (M.D. Fla. 2011) .............................................. 14

State Farm Fire & Cas. Co. v. Silver Star Health & Rehab,
    739 F.3d 579 (11th Cir. 2013) ...................................................... 38, 50

State Farm Mut. Auto. Ins. Co. v. First Care Solution, Inc.,
    232 F. Supp. 3d 1257 (S.D. Fla. 2017) ............................................... 51

State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs.,
    446 F. Supp. 3d 1032 (S.D. Fla. 2020), aff'd in pertinent part 2022
    U.S. App. LEXIS 3745 (11th Cir. 2022) ............................................ 51

Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.,
    63 F.3d 516 (7th Cir. 1995) ................................................................ 48

United States v. Browne,
    505 F.3d 1229 (11th Cir. 2007) ........................................................... 47

United States v. Busacca,
    936 F.2d 232 (6th Cir. 1991) ......................................................... 42, 43

United States v. Indelicato,
    865 F.2d 1370 (2d Cir. 1989) .............................................................. 48

Walgreen Co. v. Premier Prod. of Am., Inc.,
    2012 WL 527169 (M.D. Fla. 2012)..................................................... 44

**Statutes**

18 U.S.C. § 1962(c) ................................................................ 11

18 U.S.C. § 1962(d) ............................................................... 11

28 U.S.C. § 1292(b) ......................................................... 20, 23

Fla. Stat. § 501.201 <u>et</u>. <u>seq</u>. ................................................. 1

Fla. Stat. § 559.901, <u>et</u>. <u>seq</u>. .............................................. 1

Fla. Stat. § 559.902 ............................................................... 3

Fla. Stat. § 559.903(1) ............................................. 4, 13, 30, 31

Fla. Stat. § 559.904(1) ........................................................... 5

Fla. Stat. § 559.905(1) ........................................................... 4

Fla. Stat. § 559.905(2) ...................................................... 4, 16

Fla. Stat. § 559.905(3) ........................................................... 4

Fla. Stat. § 559.911 .............................................................. 5

Fla. Stat. § 559.920(1) ........................................................... 5

Fla. Stat. § 559.920(2) ........................................................... 6

Fla. Stat. § 559.920(8) ........................................................... 6

Fla. Stat. § 559.920(11) .......................................................... 6

Fla. Stat. § 559.920(12) .......................................................... 6

Fla. Stat. § 559.920(14) .......................................................... 5

Fla. Stat. § 559.920(17) .......................................................... 6

Fla. Stat. § 559.921(1) .......................................................... 29

Fla. Stat. § 627.7288 ............................................................. 3

Fla. Stat. § 772.103 .............................................................. 1

## <u>STATEMENT REGARDING JURISDICTION</u>

The District Court had jurisdiction over Appellants' claims pursuant to 28 U.S.C. §§ 1331 and 1367, because the matter in controversy exceeded the sum or value of $75,000.00, exclusive of interest and costs, was between citizens of different states, and because Appellants brought claims under 18 U.S.C. §§ 1961 <u>et</u> <u>seq</u>. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

A.      Did the District Court properly interpret and apply the Florida Motor Vehicle Repair Act (the "Repair Act", Fla. Stat. § 559.901, <u>et</u>. <u>seq</u>.) when adjudicating Appellant's claims under the Repair Act, the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202), the RICO Act (18 U.S.C. §§ 1962(c), (d), and 1964), the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA", Fla. Stat. § 501.201 <u>et</u>. <u>seq</u>.), the Florida Civil Remedies for Criminal Practices Act (the "FCRCPA", Fla. Stat. § 772.103), for common law fraud, and for unjust enrichment?

B.      Did the District Court err in dismissing Appellants' claim under the Repair Act?

C.      Did the District Court err in granting the motion, by Defendant/Appellee Glassco, Inc., for summary judgment on Appellants' declaratory judgment claim, and dismissing the declaratory judgment claim?

D.      Did the District Court err in granting the motions, by Defendants/Appellees John Bailey, Jason Wilemon, and Andrew Victor, for summary judgment on Appellants' RICO and FCRCPA claims, and dismissing the RICO and FCRCPA claims?

E.      Did the District Court err, in its summary judgment decision, in dismissing Appellants' FDUTPA, common law fraud, and unjust enrichment claims to the extent that they were based on the Defendants/Appellees' alleged failure to

1

comply with the Repair Act, and misrepresentations regarding their compliance with the Repair Act and entitlement to insurance payments?

      F.    Did the District Court err in denying Appellants' motion for summary judgment on their declaratory judgment, unjust enrichment, and FDUTPA claims?

      G.    Did the District Court err in denying Appellants' motion for reconsideration of the District Court's summary judgment order?

## STATEMENT OF THE CASE

**I.    Statement of Facts and Summary of the Proceedings Below**

**A.    The Relevant Statutory Framework**

**1.    Comprehensive Insurance Coverage and Claims for Glass Services**

If an insured has comprehensive automobile insurance coverage, and suffers damage to their windshield, Florida law requires automobile insurers such as GEICO to replace or repair that insured's damaged windshield with no deductible. See Fla. Stat. § 627.7288. An insured can assign their right to comprehensive insurance coverage benefits – i.e., payment for windshield replacement – to a motor vehicle repair shop in exchange for the shop's performance of the windshield replacement (hereinafter "Glass Services"). The repair shop can then seek payment directly from the insurer as the insured's assignee. See ECF No. 1, ¶¶ 27-29; ECF No. 65, ¶ 1; ECF No. 67, ¶ 27; ECF No, 69 ¶ 27; ECF No 71, ¶ 1; ECF No. 126-1, ¶ 11.

**2.    The Florida Motor Vehicle Repair Act**

With limited exceptions that are not applicable in the present case, the Repair Act applies to all motor vehicle repair shops in Florida, including entities that provide Glass Services. See Fla. Stat. §§ 559.902; 559.903(6).

Pursuant to the Repair Act, if the cost of the proposed Glass Services or other repair work will exceed $100.00, the repair shop must present to the "customer" a written notice conspicuously setting forth only the following statement, in a separate, blocked section, in capital letters of at least 12-point type:

**PLEASE READ CAREFULLY, CHECK ONE OF THE STATEMENTS BELOW, AND SIGN:**
**I UNDERSTAND THAT, UNDER STATE LAW, I AM ENTITLED TO A WRITTEN ESTIMATE IF MY FINAL BILL WILL EXCEED $100.**
**____ I REQUEST A WRITTEN ESTIMATE.**
**____ I DO NOT REQUEST A WRITTEN ESTIMATE AS LONG AS THE REPAIR COSTS DO NOT EXCEED $_____ . THE SHOP MAY NOT EXCEED THIS AMOUNT WITHOUT MY WRITTEN OR ORAL APPROVAL.**
**____ I DO NOT REQUEST A WRITTEN ESTIMATE.**
**SIGNED        DATE**

See Fla. Stat. § 559.905(2).

In this context, the Repair Act defines "customer" as the "person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work." See Fla. Stat. § 559.903(1).

In the event that a repair shop provides the required disclosure notice pursuant to Fla. Stat. § 559.905(2), and the customer checks off one of the statements indicating that they do not request a written estimate, then the repair shop is not required to provide the customer with the estimated cost of the proposed repairs. See Fla. Stat. § 559.905(3). Otherwise, repair shops, including Glass Services providers, must provide a written repair estimate to the customer, setting forth – among other things – the estimated cost of the proposed repairs if the cost of the repairs will exceed $100.00 to the customer. See Fla. Stat. § 559.905(1).

Pursuant to the Repair Act, repair shops also <u>must</u> provide their customers, upon completion of any repair, with a legible copy of the invoice for the repair. Any such invoice <u>must</u>, among other things, set forth:

(i)     an "itemized description of all labor, parts, and merchandise supplied and the costs thereof";

(ii)    a "statement indicating what, if anything, is guaranteed in connection with the repair work and the time and mileage period for which the guarantee is effective"; and

(iii)   the "current date and odometer reading of the motor vehicle".

<u>See</u> Fla. Stat. § 559.911.

The Repair Act also imposes various prohibitions on repair shops, including repair shops that provide Glass Services. Among other things, the Repair Act:

(i)     prohibits repair shops – with limited exceptions that are not applicable here – from engaging or attempting to engage in Glass Services or other forms of motor vehicle repair work without first being registered with the Florida Department of Agriculture and Consumer Services (<u>see</u> Fla. Stat. §§ 559.904(1), 559.920(1));

(ii)    prohibits repair shops from subcontracting Glass Services or other repair work without the knowledge or consent of the customer, unless the repair shop demonstrates that the customer could not reasonably have been notified (<u>see</u> Fla. Stat. § 559.920(14));

5

(iii)   prohibits repair shops from charging for repairs which have not been expressly or impliedly authorized (see Fla. Stat. § 559.920(2));

(iv)   prohibits repair shops from making or authorizing in any manner any statement which is untrue, deceptive or misleading, and which is known, or which should be known, to be untrue, deceptive or misleading (see Fla. Stat. § 559.920(8));

(v)   prohibits repair shops from causing or allowing a customer to sign any work order that does not state the repairs requested by the customer or the automobile's odometer reading at the time of repair (see Fla. Stat. § 559.920(11));

(vi)   prohibits repair shops from failing or refusing to give to a customer a copy of any document requiring the customer's signature upon completion or cancellation of the repair work (see Fla. Stat. § 559.920(12)); and

(vii)   prohibits repair shops from performing any other act that is a violation of the Repair Act or that constitutes fraud or misrepresentation (see Fla. Stat. § 559.920(17)).

**3.**    **Florida Appellate Courts Have Held that Repair Shops that Violate the Repair Act May Not Collect on Their Charges, Even in Quantum Meruit**

Florida appellate courts have repeatedly held that repair shops that violate the Repair Act are not entitled to receive payment for repair work, even in <u>quantum meruit</u>.

For example, in <u>Osteen v. Morris</u>, 481 So. 2d 1287 (Fla. 5th DCA 1986), the repair shop customer never received either a written estimate, or written notice of his right to a written estimate, as required by the Repair Act. <u>See</u> <u>id</u>., 481 So. 2d at 1288. However, the customer <u>did</u> receive an <u>oral</u> estimate, and – after receiving the oral estimate – the customer <u>actually authorized the repair work</u>. <u>Id</u>., at 1289. After the repair work was complete, the customer paid only about half of the resulting charges, and refused to pay the remaining balance. <u>Id</u>. The repair shop then filed suit to collect the remaining balance, and the customer counterclaimed to recover the partial payment that he already had made. <u>Id</u>. The trial court ruled in favor of the customer, holding that – because the repair shop had failed to comply with the Repair Act – it was not entitled to recover the remaining balance on its repair bill, even in <u>quantum meruit</u>, and the repair shop even had to refund the customer's partial payment. <u>Id</u>. The repair shop appealed, but the Florida District Court of Appeals affirmed the trial court's ruling, noting that although the "customer's only injury is that he paid the shop for services for which he was not liable due to the shop violating the [Repair Act]….if the customer is held legally liable when the shop has disregarded the provisions of the

statute, the shop could effectively disregard the intention of the legislature as evidenced by the provisions of this act." <u>Id</u>. In this context, the District Court of Appeals also held that "[the Repair Act] must necessarily be construed to be a limitation on the common law principle of <u>quantum</u> <u>meruit</u> because the recognition of a quasi-contractual obligation by the law in this situation would necessarily circumvent the very dictates of the statute by enabling a motor vehicle repair shop to ignore the statutory requirements of providing a written estimate or obtaining a written waiver." <u>Id</u>., at 1290.

Along similar lines, in <u>Gonzalez v. Tremont Body & Towing, Inc.</u>, 483 So. 2d 503 (Fla. 3d DCA 1986), the appellant customer sought review of a trial court decision awarding damages, in <u>quantum</u> <u>meruit</u>, to a repair shop that had not complied with the Repair Act's written estimate requirements. <u>See id</u>., 483 So. 2d at 504. The Florida District Court of Appeals reversed the trial court, holding that, "[o]n the authority of the well-considered decision in <u>Osteen v. Morris</u> ..., we reverse the judgment awarded the appellee automobile repair shop on a quantum meruit basis notwithstanding its admitted failure to conform with the written repair estimate requirements contained in section 559.905 of the Motor Vehicle Repair Act." <u>Id</u>.; <u>see also</u> <u>Safari Tours, Inc. v. Pasco</u>, 255 So. 3d 415, 417 (Fla. 3d DCA 2018)(repair shop that failed to comply with Repair Act was not entitled to recover on its charges); <u>Perez-Priego v. Bayside Carburetor & Ignition Corp.</u>, 633 So. 2d 1190, 1191 (Fla. 5th DCA 1994)("[U]nder Florida law, a consumer who is not given a written estimate may recover the amount

8

of the repair bill <u>and</u> still retain the benefit of the repairs."); <u>1616 Sunrise Motors, Inc.</u> <u>v. A-Leet Leasing of Florida</u>, 547 So. 2d 267 (Fla. 4th DCA 1989)(affirming denial of recovery to repair shop that violated the Repair Act's prohibition against making or charging for repairs without express or implied authorization).[1]

In this context, the Repair Act is a remedial statute. <u>See</u>, <u>e.g.</u>, <u>Raymar Constr.</u> <u>Co. v. Lopez-Soto</u>, 547 So. 2d 282, 284 (Fla. 2d DCA 1989). Accordingly, Florida appellate courts have rejected attempts to impose a narrow construction on the Repair Act, which would permit the kinds of improper repair shop conduct that the Repair Act was designed to remedy. <u>See</u>, <u>e.g.</u>, <u>1616 Sunrise Motors, Inc.</u>, <u>supra</u> (rejecting narrow construction of the term "customer" in Repair Act, where the narrow construction would undermine the purposes of the statute); <u>Raymar Constr. Co.</u>, <u>supra</u> (reversing trial court, which improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act).

## B.    GEICO's Claims and Allegations Against the Defendants

On August 7, 2019, GEICO commenced this action in the District Court against Defendants/Appellees Glassco, Inc. ("Glassco") – a motor vehicle repair shop – and its three owners, John Bailey ("Bailey"), Jason Wilemon ("Wilemon"),

---

[1] <u>See also</u> <u>Git R Done Concrete Cutting, LLC v. Swinsons Car Care Center, Inc.</u>, 22 Fla. L. Weekly Supp. 226a (Fla. 9th Jud. Cir. July 30, 2014)(repair shop that failed to comply with the Repair Act was not entitled to recover on its charges); <u>Reynolds v.</u> <u>Gorilla Motors, Inc.</u>, 11 Fla. L. Weekly Supp. 1047a (Fla. 15th Jud. Cir. August 31, 2004)("Under Florida law, a repair shop that fails to comply with Florida Statute 559.901 <u>et seq.</u> may not recover or retain the amount of the repair bill, despite the fact that the customer obtains a benefit and the overall result appears unjust.")

and Andrew Victor ("Victor")(collectively "Defendants" or "Defendants/ Appellees"). See ECF No. 1.[2]

In its Complaint, GEICO alleged that, beginning in 2016, the Defendants – using the interstate wires – billed GEICO and other Florida automobile insurers hundreds of thousands of dollars through Glassco for fraudulent, unlawful, and otherwise non-reimbursable Glass Services. See ECF No. 1, ¶¶ 1-110. In particular, GEICO alleged that the Defendants falsely represented in their billing that they were entitled to be compensated for the putative Glass Services, when in fact they were not, because the Defendants:

(i)    unlawfully subcontracted all of their purported Glass Services to independent contractors without notice to GEICO or its insureds, in violation of the Repair Act, and then – in further violation of the Repair Act – falsely billed GEICO for the purported Glass Services as if they actually had been provided by Glassco (see ECF No. 1, ¶¶ 48-66);

(ii)   falsely represented to GEICO that they had valid assignments of comprehensive insurance benefits from GEICO's insureds, when in fact they did not, because the purported "consideration" for the assignments – namely Glassco's actual performance of the Glass Services – was illusory, inasmuch as Glassco never actually performed any Glass

---

[2] All record references are to the District Court docket number, followed by the appropriate page or paragraph number (where applicable).

Services, and instead unlawfully subcontracted all of its purported Glass Services to independent contractors without notice to GEICO or its insureds (see id.);

(iii)   never complied with the written estimate or invoice provisions of the Repair Act (see id., ¶¶ 67-84);

(iv)   in further violation of the Repair Act, routinely and unlawfully caused or permitted GEICO insureds to sign work orders that did not state the automobiles' odometer readings (see id., ¶¶ 85-88);

(v)   forged GEICO insureds' signatures on Glass Services insurance claim documents in order to create the false appearance that the insureds had authorized the performance of the purported Glass Services, assigned their comprehensive insurance benefits to Glassco, had waived their right to written estimates, and had received itemized copies of the invoices for the purported Glass Services (see id., ¶¶ 82-83, 89-93);

(vi)   made various false promises and statements to GEICO's insureds in order to induce them to authorize the performance of Glass Services; and

(vii)   billed for unnecessary and illusory Glass Services, including  hours of "labor" that never occurred (see id., ¶¶ 94-97).

Based on these allegations, GEICO asserted claims against the Defendants for, variously, civil RICO violations under 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d), violation of the FCRCPA, violation of the FDUTPA, violation of the Repair Act,

common law fraud, and unjust enrichment, to recover damages for the payments Plaintiffs already had made on Glassco's Glass Services billing. See ECF No. 1, ¶¶ 117-162.

In addition, GEICO sought a declaration that it was not required to pay Glassco's outstanding and unpaid billing, because of the fraudulent and unlawful activities set forth in GEICO's Complaint, and because Glassco lacked valid assignments of insurance benefits from GEICO's insureds. See ECF No. 1, ¶¶ 111-116.

## C.   The Defendants' Motions to Dismiss and the District Court's Dismissal of GEICO's Repair Act Claim

The Defendants filed separate motions to dismiss GEICO's claims, and GEICO opposed the motions. See ECF Nos. 14, 16, 18, 21-23, 25, 29. On April 16, 2020, the District Court denied the motions to dismiss GEICO's RICO, fraud, unjust enrichment, FDUTPA, and declaratory judgment claims, but granted the motions to the limited extent of dismissing GEICO's Repair Act claim. See ECF No. 59, pp. 6-22.

In dismissing GEICO's Repair Act claim, the District Court found that the Repair Act provides a private right of action for a "customer", permits a "customer" injured by any violation of the Repair Act to sue for damages, and – if a repair shop fails to provide a written estimate as required by the Repair Act – permits a

"customer" to avoid payment of the resulting repair bill. See ECF No. 59, p. 9, citing Fla. Stat. § 559.921; Perez-Priego, supra; and Osteen, supra.

As the District Court noted, the Repair Act defines the term "customer" to mean "the person who signs the written repair estimate", and the Defendants "argue[d] that GEICO cannot sue under the Repair Act because GEICO is not a 'customer'." See ECF No. 59, pp. 9-10, quoting Fla. Stat. § 559.903(1). In response, GEICO pointed out that, "because . . . the Defendants — in violation of the Repair Act — never provided anyone with the requisite written estimates[] and therefore never gave anyone the ability to sign any written estimates," no customer "could ever sue the Defendants for violation of the Repair Act." See id., quoting ECF No. 21, p. 19. GEICO contended that "this cannot be the law." Id.

The District Court then held that "[a]lthough GEICO has identified a hole in the statutory definition of 'customer,' this hole is not an opening for GEICO — an insurer — to claim the status of a 'customer' under the Repair Act." See ECF No. 59, p. 10. Rather, the District Court found that:

(i)     Another section of the Repair Act, namely Fla. Stat. § 559.905, states that "[w]hen any customer requests a motor vehicle repair shop to perform repair work on a motor vehicle . . . the shop shall prepare a written repair estimate . . . "; and

(ii)    "Although Section 559.903(1) defines 'customer' to mean the person 'who signs the written repair estimate,' the word 'customer' in the event

13

of a repair shop's failure to furnish a written estimate permits one reasonable interpretation: the person who, under Section 559.905, 'requests a motor vehicle repair shop to perform repair work on a motor vehicle'"; and therefore

(iii) "Because the insured requests that Glassco repair the insured's motor vehicle, the insured — not GEICO — is the 'customer' under the Repair Act."

<u>See</u> ECF No. 59, p. 10.

The District Court then dismissed GEICO's Repair Act claim, concluding that:

> Although the Repair Act is 'remedial' and warrants a construction that 'give[s] the terms used the most extensive meaning to which they are reasonably susceptible,' <u>Starling v. R.J. Reynolds Tobacco Co.</u>, 845 F. Supp. 2d 1215, 1232 (M.D. Fla. 2011), no reasonable construction permits GEICO — an insurer — to sue as a 'customer' under the Repair Act.

<u>See</u> ECF No. 59, pp. 11, 22.

While the District Court dismissed GEICO's Repair Act claim at the pleading stage, it did not resolve the question of whether a repair shop that violated the Repair Act could collect from an insurer on its charges, or whether an insurer could predicate fraud, RICO, unjust enrichment, or deceptive trade practices claims on misrepresentations in Glass Services billing regarding compliance with the Repair Act and eligibility to recover payment. Instead, the District Court deferred these questions

"until summary judgment and the presentation of more considered argument". <u>See</u> ECF No. 59, pp. 15-18, 20, 22.

**D.    The Parties' Summary Judgment Motions, and the District Court's Summary Judgment Order**

After the close of discovery, GEICO and the Defendants each moved for summary judgment. <u>See</u> ECF Nos. 122, 123, 125, 127, 128.

As set forth in GEICO's summary judgment motion papers, it was clear from the record that, in violation of the Repair Act:

(i)    The Defendants subcontracted all of their Glass Services to independent contractors, without providing notice to, or obtaining consent from, the relevant GEICO insureds, despite the fact that they had the ability to provide notice to and obtain the consent of the insureds. <u>See</u> ECF No. 125, pp. 13-21, <u>citing</u> ECF No. 126-1, ¶ 20; ECF No. 126-2, at 83:16-21,102:18-20; ECF No. 126-3, at 29:12-16 and 24-25, 30:1-4, 97:16-23; ECF No. 126-4, at 38:16-20, 41:23-25, 42:1-9 and 19-23, 43:6-15; ECF No. 126-5, at 48:23-25, 82:19-25, 83:11-16.

(ii)    Relatedly, Glassco never obtained valid assignments of insurance benefits from GEICO insureds, and therefore never was entitled to bill GEICO for Glass Services as the assignee of any GEICO insureds. In particular, it was clear from the record that every assignment of insurance benefits that the insureds purportedly signed represented that

the insureds were assigning their comprehensive insurance benefits to Glassco "in consideration of <u>Glassco Inc</u> agreeing to repair and/or replace glass...." (emphasis added). <u>See</u> ECF No. 125, pp. 24-25, <u>citing</u> ECF No. 126-1, ¶ 13; ECF No. 126-3, at 104:23-25, 105:1-7, 118:8-1, 126:17-24. However, it likewise was clear that Glassco itself did not actually "repair and/or replace" any windshields for GEICO insureds, and instead the Defendants unlawfully subcontracted all the Glass Services to independent contractors, without providing notice to or obtaining consent from the relevant GEICO insureds. <u>See</u> ECF No. 125, pp. 24-25, <u>citing</u> ECF No. 126-6, at 20:12-25; ECF No. 126-2, at 9:14-18, 82:4-6, 15-22, 101:3-6, 108:12-18; ECF No. 126-3, at 28:18-25, 29:6-8, 29:12-16, 14-25, 30:1-4, 38:1-4, 37-:17-23, 60:24-25, 61:1, 82:9-18, 105:23-25; 106:1-7; ECF No. 126-4, at 38:16-22, 55:5-10; ECF No. 126-5, at 48:23-25.

(iii)     Although the cost of the Glass Services billed through Glassco always exceeded $100.00, the Defendants – in further violation of the Repair Act – never provided any written notices to GEICO or its insureds, advising them of their right to receive or waive a written estimate, and conspicuously disclosing only the exact statement provided by Fla. Stat. § 559.905(2) in a separate, blocked section, in capital letters of at least 12-point type. <u>See</u> ECF No. 125, pp. 20-23, <u>citing</u> ECF No. 126-1, ¶ 19,

21-24; ECF No. 126-2, at 80:23-25, 81:1; ECF No. 126-3, at 125:16-22; 140:18-21. Nor did the Defendants ever provide GEICO or its insureds with any written estimate of how much they intended to charge for the Glass Services. Id.

(iv)    Moreover, and in further violation of the Repair Act, upon the completion of the purported Glass Services, neither the Defendants nor any other person ever provided any GEICO insureds with any invoices for the Glass Services. See ECF No. 125, pp. 23-24, citing ECF No. 126-1, ¶¶ 26-27; ECF No. 126-2, at 92:19-20; ECF No. 126-3, at 114: 7-11, 147:20-22. Nor – by extension – did the Defendants or anyone else ever provide any GEICO insureds with invoices in the form required by the Repair Act. Id.

(v)    In another violation of the Repair Act, the Defendants also permitted insureds to sign work orders that did not state the automobiles' odometer readings. See ECF No. 126-1, ¶ 28.

Based on these facts, GEICO argued that the Defendants operated Glassco in pervasive violation of the Repair Act, lacked valid assignments of insurance benefits from GEICO's insureds, and therefore never were entitled to recover payment in connection with the Glass Services charges they submitted through Glassco to GEICO. See ECF No. 125, pp. 13-33. Accordingly, GEICO sought summary judgment on its declaratory judgment claim, which sought a declaration that Glassco

17

was not entitled to receive payment on the pending claims it had submitted to GEICO. In addition, GEICO sought summary judgment on its unjust enrichment and FDUTPA claims, which sought to recover the payments GEICO had already made on the Defendants' non-reimbursable Glass Services billing. Id.

The Defendants filed separate memoranda in opposition to GEICO's summary judgment motion, and also filed their own summary judgment motions, seeking the dismissal of GEICO's entire case. See ECF Nos. 122, 123, 127, 128, 129, 130, 131, 136.

In its September 24, 2021 summary judgment order, the District Court granted summary judgment dismissing GEICO's RICO and FCRCPA claims because, according to the District Court:

(i)    GEICO did "not point to any evidence that Bailey [or Wilemon or Victor] acted with intent to deceive or [were] aware of any misrepresentations that Glassco's representatives allegedly made" (see ECF No. 148, pp. 24-25, 55, 59);

(ii)   GEICO could not prove open-ended continuity because there was no threat of continuing criminal activity, inasmuch as GEICO "now has a policy in place that neutralizes any future threat of the Defendants' alleged racketeering" (see ECF No. 148, pp. 27-28, 55, 59); and

(iii)  GEICO could not prove closed-ended continuity because – though GEICO proffered evidence that the Defendants carried out their scheme

over the course of more than three years – GEICO, according to the
District Court, did "not argue that the enterprise expanded beyond a
single scheme or was targeted at more victims, thus it fails to proffer
sufficient evidence of closed-ended continuity" (see ECF No. 148, pp.
26-27, 55, 59).

In addition, the District Court dismissed GEICO's declaratory judgment claim,
as well as GEICO's RICO, FCRCPA, FDUTPA, common law fraud, and unjust
enrichment claims, to the extent that those claims were based on the Defendants'
alleged failure to comply with the Repair Act, or misrepresentations regarding their
compliance with the Repair Act and entitlement to payment. See ECF No. 148, pp.
18-22, 32-35, 62-63 (dismissing GEICO's RICO, fraud, and unjust enrichment
claims, to the extent that they were based on Repair Act violations or
misrepresentations, because "GEICO is not a 'customer' under the Repair Act", "the
Repair Act contains no provision rendering unpayable claims for repair work
actually performed by noncompliant repair shops", and "[c]laims under the Repair
Act for repairs performed by noncompliant repair shops are not fraudulent or
unlawful vis-a-vis the insurance company"); 37-38, 62-63 (granting Glassco
summary judgment on GEICO's declaratory judgment claim, and holding that
"technical violations for work nevertheless completed are not fraudulent conduct,
and the Repair Act contains no language stating that the technical violations are
noncompensable"); 40-42, 63 (granting the Defendants partial summary judgment

19

on GEICO's FDUTPA claim, because "Geico cannot establish an implied per se FDUTPA violation predicated on the Repair Act, at least not when it is not a 'customer' for purposes of the Act", and finding that "[n]othing in the Repair Act states that violations under its provisions constitute deceptive and unfair trade practices under FDUTPA").

## E.    GEICO's Motion for Reconsideration or for Certification Pursuant to 28 U.S.C. § 1292(b)

On October 4, 2021, GEICO moved for reconsideration of the District Court's summary judgment order, pursuant to Fed. R. Civ. P. 59(e) or, in the alternative, for certification of the District Court's summary judgment order pursuant to 28 U.S.C. § 1292(b). See ECF No. 150.

In its motion for reconsideration, GEICO contended that reconsideration was warranted to correct clear error and manifest injustice. In particular, GEICO contended that the District Court overlooked or misapprehended the Florida District Court of Appeals' controlling decision in 1616 Sunrise Motors, supra. See ECF No. 150, passim. As GEICO pointed out in its summary judgment briefing, and in its motion for reconsideration, in 1616 Sunrise Motors the District Court of Appeals held that a repair shop which violated the Repair Act was prohibited from recovering on its charges, even from someone who was admittedly not a "customer" as defined by the Repair Act. See ECF No. 150, p. 5. In particular, and as GEICO pointed out, in 1616 Sunrise Motors, the repair shop specifically argued that – although its Repair

20

Act violations precluded it from recovering from the "customer" – it nonetheless could collect from a non-customer car rental agency because the car rental agency "d[id] not meet the statutory definition of a customer" in the Repair Act. See ECF No. 150, pp. 7-8, quoting 1616 Sunrise Motors, supra. Even so, the District Court of Appeals rejected this argument, holding that

> under the circumstances of this case, the requirements of the [Repair Act] cannot be avoided by permitting recovery by the errant repair shop against an owner-lessor who may not be a 'customer' within the definition portion of the Act. The repair transaction involved herein is one that is covered by the Act. A holding to the contrary would undermine the purposes of the Act."

Id. (Emphasis added).

As GEICO pointed out in its motion for reconsideration, the District Court's summary judgment order seemed to overlook or misconstrue the District Court of Appeals' controlling decision in 1616 Sunrise Motors. See ECF No. 150, pp. 7-8. For instance, in the summary judgment order, the District Court summarized the 1616 Sunrise Motors decision as follows:

> [In 1616 Sunrise Motors,]an automobile repair shop filed a claim for repair and storage charges against a bond filed by a car rental agency who secured the vehicle when its lessee failed to pay the repair bill. … The court recognized that the car rental agency was not a "customer" under the Repair Act, rather, the lessee was the customer, and it affirmed the lower court's ruling that the repair shop did not receive the written authorization from the lessee required under the Repair Act to perform the repairs on the car. …

> Any persuasive value Sunrise Motors might have cuts against Geico. Just as that court held that the individual lessee was the customer, the Court here concludes that insureds who signed repair estimates are customers under the Repair Act. Neither here nor in Sunrise Motors does a person who does not sign a written estimate constitute a customer under the Repair Act.

21

See ECF No. 148, p. 21.

GEICO contended, in its motion for reconsideration, that this summary overlooked the essential holding from 1616 Sunrise Motors. See ECF No. 150, pp. 7-8. As GEICO argued, in 1616 Sunrise Motors, there was no dispute as to whether the car rental agency was a "customer" under the Repair Act: Everyone agreed that the car rental agency was not a "customer" as that term is defined in the Repair Act. Even so, in 1616 Sunrise Motors, the District Court of Appeals held that – as a result of its violation of the Repair Act – the repair shop could not collect from the non-"customer" car rental agency. This, despite the fact that the 1616 Sunrise Motors repair shop, like the Defendants in the present case, specifically argued that it could collect from the non-"customer" rental agency, despite the fact that its Repair Act violations barred it from recovering from the "customer", himself. In its motion for reconsideration, GEICO argued that this was the actual holding in 1616 Sunrise Motors, because – as the District Court of Appeals itself reasoned – "[a] holding to the contrary would undermine the purposes of" the Repair Act. See ECF No. 150, pp. 7-8, citing 547 So. 2d at 268.

Nonetheless, on October 14, 2021, the District Court denied GEICO's motion for reconsideration, because – according to the District Court – the 1616 Sunrise Motors case "did not involve a non-customer under the Repair Act attempting to bring legal claims against a repair shop premised on technical Repair Act violations",

"[n]either did the other cases Geico cited in its summary judgment briefing", and "the cases Geico cites do not hold that Geico – a non-customer under the Repair Act – can bring fraud and related claims predicated on violations of the Repair Act, which is the issue here." See ECF No. 158, pp. 2-3.

At the same time, the District Court denied GEICO's alternate request to amend the September 21, 2021 summary judgment order to include the certification, pursuant to 28 U.S.C. § 1292(b), that would permit GEICO to apply to this Court to take an interlocutory appeal. See ECF No. 158.

**F.    GEICO's Motion to Amend, the District Court's Entry of Non-Final Judgment, the Dismissal of GEICO's First Appeal, and the Present Renewed Appeal**

GEICO did not wish to proceed to trial on the small portion of its case that survived the Defendants' motions to dismiss and summary judgment motions, and instead wished to seek immediate appellate review of the District Court's decisions on those motions.

Therefore, to facilitate an immediate appellate review, on March 4, 2022 GEICO moved: (i) to amend its Complaint to remove the few claims that survived summary judgment and the Defendants' motions to dismiss; and (ii) for entry of final judgment. See ECF No. 182, citing Perry v. Schumacher Grp. of La., 891 F.3d 954, 958 (11th Cir. 2018)(noting that Fed. R. Civ. P. 15 "was designed for situations like this.")

On March 9, 2022, the District Court granted GEICO's motion to amend and for entry of judgment, and entered a putative "final judgment" in favor of the Defendants, thereby permitting an immediate appeal. <u>See</u> ECF Nos. 183, 185. In its order granting the motion, the District Court noted that "the parties prefer an expeditious appellate review of the novel Repair Act violations arising under Florida law", that "[t]his Court, of course, cannot certify questions to the Florida Supreme Court, unlike the Eleventh Circuit, and district courts within the circuit have routinely confronted similar Repair Act claims without binding precedent to apply", and "[t]hus, clarification – sooner rather than later – about the scope of Florida law appears advantageous to all." <u>See</u> ECF No. 183, pp. 3-4.

Thereafter, on March 25, 2022, GEICO's first appeal ensued. This Court held oral argument on the appeal on December 14, 2022, and ultimately issued an opinion on February 6, 2023 dismissing GEICO's appeal for lack of appellate jurisdiction, after determining that the District Court's March 9, 2022 judgment was not truly "final". <u>See</u> ECF No. 211.

Then, on March 24, 2023, the District Court granted GEICO's motion to re-amend its complaint to address the jurisdictional concerns raised by this Court, and for entry of judgment, and entered final judgment in favor of the Defendants, thereby permitting this appeal. <u>See</u> ECF Nos. 219, 220, 222.

### G.    Standards of Review on This Appeal

A District Court's grant of summary judgment is subject to <u>de novo</u> review, construing the facts and drawing all reasonable inferences in favor of the non-moving party. <u>See</u>, <u>e.g.</u>, <u>Smelter v. S. Home Care Servs., Inc.</u>, 904 F.3d 1276, 1284 (11th Cir. 2018). Denial of a motion pursuant to Fed. R. Civ. P. 59(e) is reviewed for an abuse of discretion. <u>See</u>, <u>e.g.</u>, <u>Stansell v. Revolutionary Armed Forces of Colombia</u>, 771 F.3d 713, 746 (11th Cir. 2014).

### SUMMARY OF ARGUMENT

Florida appellate courts have consistently held that repair shops that violate the Repair Act are not entitled to receive payment for repair work, even in <u>quantum meruit</u>. Relatedly, Florida appellate courts have rejected attempts, by errant repair shops, to circumvent the Repair Act's remedial provisions through a narrow construction of its terms – because, as the District Court of Appeals noted, "[a] holding to the contrary would undermine the purposes of the Act". <u>1616 Sunrise Motors</u>, <u>supra</u>.

Accordingly, the District Court erred when it dismissed GEICO's claim under the Repair Act at the pleading stage. What is more – and in light of the Defendants' undisputed, pervasive violations of the Repair Act – the District Court erred in granting the Defendants summary judgment, and dismissing GEICO's RICO, FCRCPA, FDUTPA, fraud, unjust enrichment, and declaratory judgment claims, to the extent that those claims were based on Defendants' failure to comply with the

Repair Act, or misrepresentations regarding their compliance with the Repair Act and eligibility for payment.

In addition, the District Court erred, at the summary judgment phase, in dismissing GEICO's fraud-based claims against Bailey, Victor, and Wilemon for lack of scienter. The evidence in the record demonstrated that Bailey, Wilemon, and Victor not only owned Glassco, but also directly participated in Glassco's operations, orchestrated Glassco's unlawful activities, and profited from Glassco's unlawful operations. In this context – and though GEICO did not itself move for summary judgment on its fraud-based claims – there was ample evidence in the record to create a fact question regarding the Defendants' scienter.

Moreover, the District Court erred, at the summary judgment phase, in dismissing GEICO's RICO and FCRCPA claims based on lack of continuity. In particular, the District Court found that there was no threat of continuing criminal activity, and therefore no open-ended continuity, because – once the events giving rise to this case occurred – GEICO enacted vehicle inspection policies to "neutralize[] any future threat of the Defendants' alleged racketeering". See ECF No. 148, pp. 27-28. However, the threat of continuing criminal activity should be assessed at the time when the racketeering activity occurred, and not in light of any subsequent remedial measures that may be taken by a victim. In any case, the evidence in the record was sufficient to permit a reasonable factfinder to determine that predicate acts of wire

fraud were part of Glassco's regular way of doing business, which itself would be sufficient to support a finding of open-ended continuity.

The District Court also erred in finding an absence of closed-ended continuity. The facts in the record demonstrated that the Defendants submitted hundreds of fraudulent and unlawful claims through Glassco to GEICO on a continuous basis from early 2016 through mid-2019. Though the Defendants' alleged predicate acts extended over hundreds of claims and a period of more than three years, and though GEICO explicitly argued that its insureds also were victims of the Defendants' scheme, the District Court erroneously found that GEICO did "not argue that the enterprise expanded beyond a single scheme or was targeted at more victims, thus it fails to proffer sufficient evidence of closed-ended continuity". See ECF No. 148, pp. 26-27.

Finally, the District Court erred in denying GEICO's own motion for summary judgment. Based on the undisputed facts in the record, it is clear that the Defendants were ineligible to receive payment as the result of their Repair Act violations, but nonetheless obtained payment from GEICO – and were seeking additional payments from GEICO – through a series of deceptive and unfair trade practices. Against this backdrop, the District Court should have awarded summary judgment to GEICO on its declaratory judgment, unjust enrichment, and FDUTPA claims.

**ARGUMENT**

## I. Because the Florida Supreme Court has not Interpreted the Relevant Provisions of the Repair Act, Florida <u>District Court of Appeals Decisions are Controlling</u>

In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. <u>See</u>, <u>e.g.</u>, <u>Shapiro v. Associated Int'l Ins. Co.</u>, 899 F.2d 1116, 1118 (11th Cir. 1990). If the Florida Supreme Court has not spoken on an issue, Florida District Court of Appeals decisions control absent persuasive indication that the Florida Supreme Court would rule otherwise. <u>See</u>, <u>e.g.</u>, <u>Blanchard v. State Farm Mut. Auto. Ins. Co.</u>, 903 F.2d 1398, 1399 (11th Cir. 1990).

The Florida Supreme Court has never ruled on the proper construction or interpretation of the Repair Act. Accordingly, the Florida District Court of Appeals' decisions in <u>1616 Sunrise Motors, Inc.</u>, <u>Raymar Constr. Co.</u>, <u>Osteen</u>, <u>Gonzalez</u>, <u>Safari Tours, Inc.</u>, and <u>Perez-Priego</u> should control in this case.

## II. Florida District Courts of Appeal Have Held that Repair Shops that Violate the Repair Act May Not Collect on Their Charges, Even in <u>Quantum Meruit, and Even From a Non-"Customer"</u>

With that in mind, and as discussed above, Florida District Courts of Appeal, and other Florida courts, have held that repair shops that violate the Repair Act may not collect on their charges, even in <u>quantum</u> <u>meruit</u>, and even from a non-"customer". <u>See</u>, <u>e.g.</u>, <u>Osteen v. Morris</u>; <u>Gonzalez</u>; <u>Safari Tours</u>; <u>1616 Sunrise Motors</u>; <u>Perez-Priego</u>, <u>supra</u>.

28

As GEICO pointed out in its summary judgment papers (see ECF No. 125, pp. 22-23), in <u>1616 Sunrise Motors</u>, a car rental agency leased an automobile to a driver. 547 So. 2d at 268. There was an accident, and the automobile was towed to a repair shop, evidently at the request of the driver/lessee, who was the "customer" as defined by the Repair Act. <u>Id</u>. Without obtaining the verbal or written authorization of the driver/lessee/customer as required by the Repair Act, the repair shop repaired the vehicle. <u>Id</u>. Thereafter, the driver/lessee/customer failed to respond to the repair shop's requests to pay for the repair and retrieve the vehicle. <u>Id</u>. As a result, the repair shop filed suit against the car rental agency to recover the costs of the repairs and vehicle storage. <u>Id</u>. However, the trial court found that the repair shop was precluded from recovery, because it had violated the Repair Act by performing repairs without the authorization of the "customer" – i.e., the driver/lessee. <u>Id</u>. On appeal, the repair shop – much like the Defendants in the present case – argued that: (i) the Repair Act only precluded the shop from holding the "customer" liable for the repairs; (ii) the car rental agency/lessor did not meet the statutory definition of "customer"; and therefore (iii) the repair shop could recover the costs of the repair from the car rental agency/lessor, even if it could not recover the costs of the repair from the driver/lessee/customer. <u>Id</u>. However, the District Court of Appeals rejected that argument, holding that:

> under the circumstances of this case, the requirements of the [Repair Act] cannot be avoided by permitting recovery by the errant repair shop against an owner-lessor who may <u>not</u> be a "customer" within the definition portion of the Act. The repair transaction involved herein is one that is covered by the Act. <u>A holding to the contrary would undermine the purposes of the Act.</u>

Id. (Emphasis added).

Thus, in 1616 Sunrise Motors, the District Court of Appeals rejected a repair shop's argument to the effect that – though its Repair Act violations precluded recovery from the "customer" – it could nonetheless recover on its charges from a non-"customer". See also Raymar Constr. Co., supra 547 So. 2d at 284 (another case cited in Plaintiffs' summary judgment papers, in which the District Court of Appeals reversed a trial court that improperly had imposed a narrow construction on the term "consumer transaction" in the Repair Act, and noted that "[R]emedial statutes are entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose.")

### III.  The District Court Erred in Dismissing Plaintiffs' Repair Act Claim at the Pleading Stage

Accordingly, the District Court erred in dismissing Plaintiffs' Repair Act claim at the pleading stage. See ECF No. 59, pp. 9-11. It is true that the Repair Act provides a private right of action to a "customer injured by a violation of this part". See Fla. Stat. § 559.921(1). It likewise is true that the Repair Act defines "customer" as "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work". See Fla. Stat. § 559.903(1). It is also true that GEICO did not itself sign any written repair estimates.

However, and as GEICO pointed out in opposition to the Defendants' motions to dismiss, the Defendants operated Glassco in pervasive violation of the Repair Act by – among many other things – failing to provide any written estimates, to anyone, in connection with the claims they submitted through Glassco to GEICO. See, e.g., ECF No. 21, pp. 17-18, citing ECF No. 1, ¶¶ 67-76, and passim. Thus – and as GEICO pointed out in opposition to the Defendants' motions to dismiss – if the Repair Act's statutory definition of "customer" were to be narrowly construed, then: (i) no customer could ever sue the Defendants for violation of the Repair Act; because (ii) a "customer" must be the person who signs the written estimate or his designee; and yet (iii) the Defendants – in violation of the Repair Act – never provided anyone with the requisite written estimates, and therefore never gave anyone the ability to sign any written estimates. Id. As GEICO argued in opposition to the Defendants' motions to dismiss, this cannot be the law. Id. A repair shop and its owners should not be permitted to use their own violations of the Repair Act (for instance, failure to provide written estimates) to insulate themselves from liability for their own violations of the Repair Act.

In fact, and as GEICO argued in opposition to the Defendants' motions to dismiss, the Repair Act is a remedial statute, and – rather than being subject to a narrow construction – it is "entitled to a liberal construction so as to advance the remedy provided where it is consistent with the legislative purpose". See, e.g., ECF No. 21, pp. 18-19, quoting Raymar Constr. Co., supra.

31

Indeed, and as GEICO pointed out to the District Court, in <u>1616 Sunrise</u> <u>Motors</u>, the District Court of Appeals rejected a repair shop's argument to the effect that – though its Repair Act violations precluded recovery from the "customer" – it could nonetheless recover on its charges from the non-"customer" car rental company. <u>See</u>, <u>e.g.</u>, ECF No. 21, pp. 18-19.

Even so, the District Court dismissed GEICO's Repair Act claim, holding that "no reasonable construction permits GEICO – an insurer – to sue as a 'customer' under the Repair Act". <u>See</u> ECF No. 59, p. 11. In reaching this conclusion, the District Court itself construed the Repair Act in a manner that was at odds with the statutory language, and in a manner that did not "advance the remedy provided where it is consistent with the legislative purpose". In particular, the District Court held that:

(i)    Although the "definitions" section of the Repair Act defines "customer" to mean "the person who signs the written repair estimate", <u>another</u> section of the Repair Act, namely Fla. Stat. § 559.905, states that "[w]hen any customer requests a motor vehicle repair shop to perform repair work on a motor vehicle . . . the shop shall prepare a written repair estimate . . . "; and

(ii)   "Although Section 559.903(1) defines 'customer' to mean the person 'who signs the written repair estimate,' the word 'customer' in the event of a repair shop's failure to furnish a written estimate permits one reasonable interpretation: the person who, under Section 559.905,

32

'requests a motor vehicle repair shop to perform repair work on a motor vehicle'"; and therefore

(iii)    "Because the insured requests that Glassco repair the insured's motor vehicle, the insured – not GEICO – is the 'customer' under the Repair Act."

GEICO respectfully submits that this was erroneous. First, and contrary to the District Court's conclusion, Section 559.905 does not define who is or is not a "customer" under the Repair Act. It simply states that, if someone who <u>does</u> meet the definition of a "customer" requests repair work, the repair shop is required to prepare a written estimate.

Second, and relatedly, the District Court – when faced with a situation in which <u>no one</u> met the strict statutory definition of a "customer" – should not have construed the Repair Act in a manner that undermined its remedial purpose. In particular, it is clear from the weight of District Court of Appeals decisions that the Defendants' violations of the Repair Act would prevent them from recovering on their charges from a "customer", and would entitle the "customer" to sue under the Repair Act to recover any payments it already had made. <u>See</u> <u>1616 Sunrise Motors, Inc.</u>, <u>Raymar Constr. Co.</u>, <u>Osteen</u>, <u>Gonzalez</u>, <u>Safari Tours, Inc.</u>, and <u>Perez-Priego</u>, <u>supra</u>. And yet, in the District Court's analysis, a repair shop could operate in flagrant violation of the Repair Act, to the point where it would be barred from recovering on its charges from a "customer", but nonetheless could recover from anyone else – such as a non-

"customer" insurer, or the non-"customer" car rental agency in <u>1616 Sunrise Motors</u> – with impunity.

The District Court's dismissal of GEICO's Repair Act claim therefore is at odds with the Florida District Court of Appeals' decisions in <u>1616 Sunrise Motors</u> and <u>Raymar Constr. Co.</u>, which hold that the Repair Act is entitled to a liberal construction to promote its remedial purposes. As the <u>1616 Sunrise Motors</u> court held, "the requirements of the [Repair Act] cannot be avoided by permitting recovery by the errant repair shop against" a party "who may not be a 'customer' within the definition portion of the Act. The repair transaction involved herein is one that is covered by the Act. <u>A holding to the contrary would undermine the purposes of the Act.</u>" (Emphasis added).

**IV.  The District Court Erred in Granting the Defendants Summary Judgment, and Dismissing GEICO's RICO, FCRCPA, FDUTPA, Fraud, Unjust Enrichment, and Declaratory Judgment Claims, to the Extent that Those Claims were Based on Defendants' Failure to Comply with the Repair Act, or Misrepresentations Regarding Their <u>Compliance with the Repair Act and Entitlement to Payment</u>**

Relatedly, the District Court erred in granting the Defendants summary judgment, and dismissing GEICO's RICO, FCRCPA, FDUTPA, fraud, unjust enrichment, and declaratory judgment claims, to the extent that those claims were based on Defendants' failure to comply with the Repair Act, and misrepresentations regarding their compliance with the Repair Act and entitlement to payment.

At the summary judgment phase, there was no genuine question of material fact regarding the Defendants' compliance with the Repair Act. Rather, it was clear from the record that the Defendants operated Glassco in flagrant violation of the Repair Act, by unlawfully subcontracting all of their Glass Services to independent contractors without providing notice or obtaining consent, and failing to provide estimates or invoices, among other things. See ECF No. 125, pp. 13-21, 20-25, citing ECF No. 126-1, ¶¶ 13, 19-24, 26-27; ECF No. 126-2, at 9:14-18, 80:23-25, 81:1, 82:4-6, 15-22, 83:16-21, 92:19-20, 101:3-6, 102:18-20, 108:12-18; ECF No. 126-3, at 28:18-25, 29:6-16, 24-25, 29:12-16, 14-25, 30:1-4, 97:16-23, 104:23-25, 105:1-7, 114: 7-11, 118:8-1, 125:16-22, 126:17-24, 140:18-21, 147:20-22; ECF No. 126-4, at 38:16-20, 41:23-25, 42:1-9 and 19-23, 43:6-15; ECF No. 126-5, at 48:23-25, 82:19-25, 83:11-16; ECF No. 126-6, at 20:12-25.

Nonetheless, the District Court dismissed GEICO's declaratory judgment claim, as well as GEICO's RICO, FCRCPA, FDUTPA, common law fraud, and unjust enrichment claims, to the extent that those claims were based on the Defendants' alleged failure to comply with the Repair Act, or misrepresentations regarding their compliance with the Repair Act and entitlement to payment. See ECF No. 148, pp. 18-22, 32-35, 62-63. The District Court based its decision on its determinations that:

(i)     "GEICO is not a 'customer' under the Repair Act", "the Repair Act contains no provision rendering unpayable claims for repair work actually performed by noncompliant repair shops", and "[c]laims under

35

the Repair Act for repairs performed by noncompliant repair shops are not fraudulent or unlawful vis-a-vis the insurance company" (see ECF No. 148, pp. 18-22, 32-35, 62-63);

(ii)    "technical violations for work nevertheless completed are not fraudulent conduct, and the Repair Act contains no language stating that the technical violations are noncompensable" (id., at 37-38, 62-63); and

(iii)   "Geico cannot establish an implied per se FDUTPA violation predicated on the Repair Act, at least not when it is not a 'customer' for purposes of the Act", and "[n]othing in the Repair Act states that violations under its provisions constitute deceptive and unfair trade practices under FDUTPA" (id., at 40-42, 63).

GEICO respectfully submits that these determinations were erroneous. First, it does not matter whether the Repair Act itself includes a provision "rendering unpayable claims for repair work actually performed by noncompliant repair shops", because Florida District Courts of Appeal consistently have held that repair shops that violate the Repair Act may not collect on their charges, even in quantum meruit. See, e.g., Osteen, 1616 Sunrise Motors, Inc., Gonzalez, Safari Tours, Inc., Perez-Priego, supra. GEICO cited to these appellate decisions in its summary judgment papers, and – considering that there is no relevant authority from the Florida Supreme Court – the District Court was bound to follow them. See Blanchard, supra; see also State Farm Mut. Auto. Ins. Co. v. Williams, 824 F.3d 1311, 1314 (11th Cir.

2014)("As a federal court sitting in diversity, the decisions of Florida's District Courts of Appeal control our application of Florida law, absent persuasive authority the Florida Supreme Court would decide otherwise.")

Second, GEICO's status as a non-"customer" does not alter this analysis. As Florida District Courts of Appeal have held, the Repair Act is a remedial statute that is entitled to a liberal construction so as to advance its remedial purposes. See, e.g., ECF No. 125, pp. 10-11, citing Raymar Constr. Co., 1616 Sunrise Motors, supra. This is no mere abstract concept: In 1616 Sunrise Motors, which is directly on-point, the repair shop specifically argued that: (i) the car rental agency/lessor did not meet the statutory definition of "customer"; and therefore (ii) the repair shop could recover the costs of the repair from the car rental agency/lessor, even if – as the result of its Repair Act violations – it could not recover the costs of the repair from the driver/lessee/customer, himself. Id. However, the District Court of Appeals rejected this argument, finding that "A holding to the contrary would undermine the purposes of the Act." Id. (Emphasis added).

In other words, pursuant to 1616 Sunrise Motors, a repair shop that violates the Repair Act is prohibited from recovering on its charges from a non-"customer", just as it would be prohibited from recovering from a "customer".

Against this backdrop, Plaintiffs respectfully submit that the District Court's summary judgment order misconstrued the District Court of Appeals' controlling decision in 1616 Sunrise Motors. For instance, and as set forth above, in the summary

37

judgment order, the District Court summarized the <u>1616 Sunrise Motors</u> decision as

follows:

> [In <u>1616 Sunrise Motors</u>,] an automobile repair shop filed a claim for repair and storage charges against a bond filed by a car rental agency who secured the vehicle when its lessee failed to pay the repair bill. … The court recognized that the car rental agency was not a "customer" under the Repair Act, rather, the lessee was the customer, and it affirmed the lower court's ruling that the repair shop did not receive the written authorization from the lessee required under the Repair Act to perform the repairs on the car. …
>
> Any persuasive value <u>Sunrise Motors</u> might have cuts against Geico. Just as that court held that the individual lessee was the customer, the Court here concludes that insureds who signed repair estimates are customers under the Repair Act. Neither here nor in <u>Sunrise Motors</u> does a person who does not sign a written estimate constitute a customer under the Repair Act.

<u>See</u> ECF No. 148, p. 21.

Plaintiffs respectfully submit that this summary by the District Court

overlooked the key holding from <u>1616 Sunrise Motors</u>: Namely, that a repair shop

that violates the Repair Act may not collect on its charges from <u>anyone</u> – whether a

"customer" <u>or</u> a non-"customer".

Contrary to the weight of Florida appellate authority, the District Court's

summary judgment decision effectively permits Glassco to retain the payments it

already obtained from GEICO, and to pursue collection on its outstanding Glass

Services billing, despite its undisputed violations of the Repair Act. Plaintiffs

respectfully submit that – at a minimum – the District Court of Appeals' decision in

<u>1616 Sunrise Motors</u> mandated a different outcome with respect to these claims.

Accordingly, the District Court erred in granting summary judgment, and

dismissing Plaintiffs declaratory judgment, fraud, unjust enrichment, RICO, FCRCPA, and FDUTPA claims, to the extent that those claims were based on the Defendants' alleged failure to comply with the Repair Act, or misrepresentations regarding their compliance with the Repair Act and eligibility to recover payment on their Glass Services claims.

In this context, federal courts in Florida repeatedly have sustained RICO, FCRCPA, FDUTPA, fraud, unjust enrichment, and declaratory judgment claims based on misrepresentations, in insurance billing, to the effect that a claimant was in compliance with relevant law and was eligible to recover payment on its charges, when in fact it was not. See, e.g., See, e.g., State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, 739 F.3d 579, 584 (11th Cir. 2013)(where plaintiff-insurer alleged that defendant operated in violation of the law and therefore was not entitled to recover insurance payments, plaintiff-insurer was entitled to seek a judicial remedy to recover its previous payments, and a declaratory judgment regarding outstanding billing); Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1330 (11th Cir. 2016)(if plaintiff-insurer "showed that the clinics were in fact operating in violation of the Clinic Act, then it was entitled to recover the amounts it paid to the clinics and to obtain a declaratory judgment that it is not required to pay the clinics for outstanding bills that originated during the violation period."); Gov't Emples. Ins. Co. v. Palm Wellness Ctr., LLC, 2021 U.S. Dist. LEXIS 232075 (M.D. Fla. 2021)(denying motion to dismiss declaratory judgment, fraud, RICO, FDUTPA, and unjust enrichment claims, which

were based – in part – on allegations that the defendants' insurance billing falsely represented that they were operating in compliance with Florida law, and were eligible for insurance reimbursement, when in fact they were not).

Though these cases involved no-fault insurance or "PIP" claims, rather than Glass Services claims, the same principles apply in the Glass Services context. For example, in Gov't Emples. Ins. Co. v. Martineau, M.D. Fla. Case No. 8:19-cv-01382-MSS-SPF, a case that is extremely similar to the present case, GEICO alleged that the defendant repair shop never was entitled to recover payment for its purported Glass Services, because it operated in pervasive violation of the Repair Act. See id., at ECF No. 17, passim. By extension, GEICO alleged that all of the repair shop's billing falsely represented that it was entitled to be paid on its charges, when in fact it was not. Id. Based on these allegations, and much as in the present case, GEICO asserted claims against the Martineau defendants for RICO and FDUTPA violations, common law fraud, unjust enrichment, and declaratory relief. Id. The Martineau defendants moved to dismiss, but the district court denied the motion, holding that: (i) GEICO's declaratory judgment claim – which sought a declaration that GEICO did not have to pay the defendants' Glass Services billing because of their Repair Act violations – was legally sufficient, and noting that "courts have routinely allowed insurer-plaintiffs to pursue similar forms of declaratory relief" (see id., at ECF No. 29, pp. 10-11); and (ii) GEICO's RICO and other claims were legally sufficient, despite the Martineau defendants' argument that GEICO did not suffer any cognizable injury as the result of

40

their "procedural violations of the Repair Act", considering that "GEICO's theory of the case is not that Defendants' violations of the Repair Act, standing alone, caused it to suffer financial losses. The Amended Complaint makes clear that GEICO's alleged injuries stem from Defendants' alleged submission of fraudulent claims seeking payment for non-reimbursable services. … On GEICO's theory, Defendants' alleged Repair Act violations made them ineligible to receive payment for the windshield-related services and were thus a component of the fraudulent scheme." (id., pp. 15-16).

Accordingly, the District Court's summary judgment decision should be reversed.

## V.   The District Court Erred in Granting the Defendants Summary Judgment, and Dismissing GEICO's Fraud-Based Claims Against Bailey, Wilemon, and Victor, for Lack of Scienter

In addition, the District Court erred, at the summary judgment phase, in dismissing GEICO's fraud-based claims against Bailey, Victor, and Wilemon for lack of scienter. See ECF No. 148, pp. 24-25, 55, 59. In particular, the District Court mistakenly found that GEICO did "not point to any evidence that Bailey [or Wilemon or Victor] acted with intent to deceive or [were] aware of any misrepresentations that Glassco's representatives allegedly made". See id.

In fact, there was ample evidence in the record to create a fact question regarding Bailey, Victor, and Wilemon's scienter. As GEICO pointed out in its summary judgment motion papers, the record in this case demonstrated that Bailey,

Wilemon, and Victor – besides owning Glassco – all were direct participants in the operation and management of Glassco's fraudulent and unlawful business. See ECF No. 125, pp. 11-12. In particular, the record indicated that:

(i)     Bailey was the CEO of Glassco, managed the day-to day operations of Glassco, and was responsible for "pretty much everything" at Glassco (see id., citing ECF No. 126-2, at 22:25, 23:1-6; ECF No. 126-3, at 36:2-4);

(ii)    Wilemon was president of Glassco from its inception, and – notably – was responsible for submitting Glassco's allegedly fraudulent invoices to GEICO, and handling Glassco's allegedly-fraudulent billing (see id., citing ECF No. 126-1, ¶¶ 5, 7-8; ECF No. 126-2, at 32:2-4, 50:21-23, 131:1-3; ECF No. 126-3, at 22:17-21, 43:3-18, 44:20-22; ECF No. 126-3, at 21:3-8, 27:7-21, 29:13-24, 31:10-22, 37:12-15, 38:6-8, 47:3-11, 52:18-23, 79:6-11); and

(iii)   Victor's "knowledge and expertise" was used to "set everything up" for Glassco, which included participating in the creation of the allegedly-fraudulent work orders and invoices that the Defendants submitted to GEICO in support of their claims for Glass Services (see id., citing ECF No. 126-5, at 27:18-25, 44:16-20, 58:20-25, 59:1-9).

In this context, "[c]ases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary

judgment." <u>Cafaro v. Zois</u>, 693 Fed. Appx. 810, 816 (11th Cir. 2017)(internal quotations and citation omitted). Rather, "the question of scienter is typically left to the trier of fact". <u>See</u> <u>SEC v. Watkins Pencor, LLC</u>, 810 Fed. Appx. 823, 830 (11th Cir. 2020). In the present case, there was sufficient evidence in the record to permit a reasonable jury to conclude that Bailey, Wilemon, and Victor acted with scienter when they submitted the allegedly-fraudulent Glass Services billing through Glassco to GEICO. Accordingly, summary judgment on this issue was inappropriate.

## VI.    The District Court Erred in Granting the Defendants Summary Judgment, and Dismissing GEICO's RICO and FCRCPA Claims for Lack of Continuity

In addition, the District Court should not have dismissed GEICO's RICO and FCRCPA claims for lack of open- or closed-ended continuity.

To establish open-ended continuity in support of its RICO claims, GEICO was required to demonstrate that "the misrepresentations were part of the 'regular way of doing business' or threaten repetition in the future." <u>Ferrell v. Durbin</u>, 311 Fed. Appx. 253, 257 (11th Cir. 2009). In this context, the District Court found that there was no threat of continuing criminal activity, and therefore no open-ended continuity, because – <u>after</u> the alleged racketeering giving rise to this case occurred – GEICO enacted vehicle inspection policies to "neutralize[] any future threat of the Defendants' alleged racketeering". <u>See</u> ECF No. 148, pp. 27-28. As the District Court reasoned, "[b]ecause Geico has not provided evidence showing that a future threat of criminal

43

activity remains after it adopted the pre-authorization-inspection policy, no future threat of continuing activity exists to establish opened-ended continuity." Id.

GEICO respectfully submits that this was erroneous, because "in the context of an open-ended period of racketeering activity, the threat of continuity must be viewed at the time the racketeering activity occurred." United States v. Busacca, 936 F.2d 232, 238 (6th Cir. 1991). Therefore, "[t]he lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption of that activity." Id.; see also Platinum Props. Inv'r Network, Inc. v. Sells, 2020 U.S. Dist. LEXIS 107052 at * 13 (S.D. Fla. 2020)(citing Busacca and finding open-ended continuity where, "[w]hile Plaintiffs concede that Defendants' conduct has ceased, Plaintiffs argue that it is only because Plaintiffs forced the cessation; the cessation was not voluntary."); Cont'l Cas. Co. v. Cura Grp., Inc., 2005 U.S. Dist. LEXIS 51116 at * 50 - * 53 (S.D. Fla. 2005)(finding open-ended continuity where the defendant's alleged racketeering activity only ended upon discovery, and where the defendants could have engaged in additional predicate acts if their scheme had not been discovered); CVLR Performance Horses, Inc. v. Wynne, 524 Fed. Appx. 924, 929 (4th Cir. 2013)(district court dismissed RICO claims for lack of open-ended continuity, because the victims had already "been bilked" and "presumably, [knew] better than to do more business with" the defendants in the future, but the Fourth Circuit reversed, citing Busacca, and held that the "lack of a threat of continuity of racketeering activity cannot be asserted merely by showing a fortuitous interruption

of that activity. … Instead, the threat of continuity must be viewed at the time the racketeering activity occurred.")(Internal quotations and citations omitted); <u>Allstate Ins. Co. v. Lyons</u>, 843 F. Supp. 2d 358, 370 (E.D.N.Y. 2012)(collecting cases demonstrating that "a RICO plaintiff relying on open-ended continuity is not required to allege a currently-existing threat that the pattern of racketeering activity will continue").

In this case, and as discussed above, the facts in the record demonstrated that all of the hundreds of claims that the Defendants submitted through Glassco to GEICO falsely represented that Glassco was entitled to payment, when in fact it was not entitled to payment because it operated in pervasive violation of the Repair Act. The facts in the record likewise demonstrated that the Defendants were continuing to pursue collection on much of this fraudulent and unlawful billing at the time when GEICO commenced this action. <u>See</u>, <u>e.g.</u>, ECF No. 126-1, ¶ 16. Accordingly, there was ample evidence in the record to demonstrate that the Defendants' misrepresentations were part of the regular way in which the Defendants operated Glassco, and that they threatened repetition in the future.

The District Court also erred in finding that GEICO failed to demonstrate closed-ended continuity. The facts in the record demonstrated that the Defendants submitted hundreds of fraudulent and unlawful claims through Glassco to GEICO on a continuous basis from early 2016 through mid-2019. <u>See</u>, <u>e.g.</u>, ECF No. 126-1, ¶¶ 12-33. In this context, courts within this Circuit have sustained RICO claims where

the challenged pattern of racketeering lasted for as little as 13 months. <u>See</u>, <u>e.g.</u>, <u>Walgreen Co. v. Premier Prod. of Am., Inc.</u>, 2012 WL 527169 at *4 (M.D. Fla. 2012)(sustaining RICO claim where scheme "lasted for one year and one month"); <u>see also</u> <u>Magnifico v. Villanueva</u>, 783 F.Supp.2d 1217, 1229 (S.D. Fla. 2011)(18 months). In the present case, the Defendants' hundreds of predicate acts of wire fraud spanned a period of more than three years, which was more than sufficient to establish a closed-ended pattern.

Nonetheless, the District Court found that GEICO could not establish a closed-ended pattern because: (i) a "single scheme with a 'narrow scope'—'involv[ing] only one scheme with a singular objective and a closed group of targeted victims'—is insufficient to establish closed-ended continuity"; and (ii) according to the District Court, GEICO did "not argue that the enterprise expanded beyond a single scheme or was targeted at more victims, thus it fails to proffer sufficient evidence of closed-ended continuity". <u>See</u> ECF No. 148, pp. 26-27, <u>quoting</u> <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1267 (11th Cir. 2004), and <u>citing</u> <u>Daedalus Cap. LLC v. Vinecombe</u>, 625 F. App'x 973, 976 (11th Cir. 2015).

GEICO respectfully submits that this determination was erroneous. First, GEICO actually <u>did</u> argue that the Defendants' scheme was targeted at victims other than GEICO. For example, and aside from the fact that there were <u>three</u> GEICO Plaintiffs, rather than one, GEICO contended – and the evidence in the record indicated – that GEICO's insureds <u>also</u> were victims of the Defendants' racketeering

activity. See, e.g., ECF No. 133, pp. 24-25; see also ECF No. 126-1, ¶ 31; Platinum Props., supra at fn. 5 ("Defendants make the additional argument that a pattern of racketeering activity does not exist when the predicate acts of racketeering are directed at one victim with a single objective. Plaintiffs, however, are not a single victim; they are two legal entities and an individual. Thus, this argument fails.")

Second, as discussed above and in GEICO's summary judgment motion papers, the Defendants submitted hundreds of individual fraudulent Glass Services claims through the interstate wires over the course of more than three years, each of which caused GEICO to suffer a separate injury. Furthermore, the Defendants' alleged racketeering scheme was ongoing at the time when GEICO commenced this action, with no natural "conclusion" in sight. That is a far cry from the "single scheme" situations in Jackson and Daedalus, which involved inherently terminable schemes, with discrete, finite objectives, that occurred over short periods of time. For instance, in Jackson, the "the alleged racketeering activity was related to the settlement of a single lawsuit, and, notably, was not designed to perpetrate racketeering with respect to a series of cases". Id., 372 F.3d at 1267 (emphasis in original). Moreover, in Jackson, all of the alleged predicate acts occurred within a period of only nine months, which led this Court to affirm dismissal of the RICO claims for lack of closed-ended continuity "[i]n view of the narrow scope of the alleged racketeering activity and the limited time frame in which it is said to have taken place". Id.

In Daedalus, the alleged racketeering activity was limited to a single, inherently terminable scheme with a discrete goal to divert the proceeds of two contracts from one corporate entity to another. See Daedalus, 625 F. App'x at 976-977; see also Daedalus Capital LLC v. Vinecombe, 2014 U.S. Dist. LEXIS 186298 at * 24 (M.D. Fla. 2014).

Accordingly, the alleged closed-ended patterns in Jackson and Daedalus were not remotely similar to the facts in the present case, where the record demonstrates that the Defendants submitted hundreds of distinct fraudulent and unlawful claims to at least three insurance companies through the wires on a continuous basis for more than three years, thereby victimizing not only the insurance companies, but also their insureds. The District Court should have found that this was sufficient to establish the requisite continuity and pattern of racketeering activity. See, e.g., H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 236 (1989)("In our view, Congress had a more natural and commonsense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity."); United States v. Browne, 505 F.3d 1229, 1263 (11th Cir. 2007)(finding three related predicate acts over a five year period sufficient to establish a closed-ended pattern, and distinguishing Jackson by noting that, in Jackson, the Court "affirmed a district court's dismissal of a

plaintiff's substantive racketeering claims where the alleged racketeering activities pertained to the settlement of a single lawsuit, not a series of lawsuits, over a nine-month period of time").

In any case, "[t]he repeated infliction of economic injury upon a single victim of a single scheme is sufficient to establish a pattern of racketeering activity for purposes of civil RICO." Uniroyal Goodrich Tire Co. v. Mutual Trading Corp., 63 F.3d 516, 524 (7th Cir. 1995)(internal quotations and citation omitted); see also United States v. Indelicato, 865 F.2d 1370, 1383 (2d Cir. 1989)(Congress did not intend 'to exclude from the reach of RICO multiple acts of racketeering simply because … they further but a single scheme."); Kearney v. Foley & Lardner, LLP, 607 Fed. Appx. 757, 759 (9th Cir. 2015)(holding that a RICO pattern "does not require multiple schemes so long as the predicate acts involved are not isolated or sporadic. The acts here were not isolated or sporadic; they occurred consistently, without break, for two years. Likewise, a pattern does not require multiple victims.")(Internal quotations and citations omitted); Blue Cross & Blue Shield v. Kamin, 876 F.2d 543, 545 (6th Cir. 1989)(finding the requisite continuity and pattern of racketeering activity where – as in the present case – a plaintiff was the single victim "of literally hundreds of separate acts of mail fraud", because "[a]s we read the [RICO] statute, we do not believe that Congress intended that one could insulate himself from the reach of RICO simply by repeatedly bilking the same victim").

49

## VII.  The District Court Erred in Denying Plaintiffs'
## Own Motion for Summary Judgment

Finally, the District Court erred in denying GEICO's own motion for partial summary judgment on its declaratory judgment, unjust enrichment, and FDUTPA claims.

In particular, was clear from the record that the Defendants operated Glassco in pervasive violation of multiple important provisions of the Repair Act – which are designed to protect the public – not only through their unlawful subcontracting of the Glass Services without notice to or consent from anyone, but also through their failure to comply with the Repair Act's written estimate, invoice, and odometer provisions, among other things.

As set forth in Plaintiff's summary judgment papers, and as discussed herein, the Defendants' extensive Repair Act violations precluded them from recovering from GEICO on their Glass Services claims. Because the Defendants never had any right to be compensated for their Glass Services claims, the District Court should have granted GEICO summary judgment on its unjust enrichment and declaratory judgment claims. See, e.g., Silver Star Health & Rehab, 1616 Sunrise Motors, Inc., Raymar Constr. Co., Osteen, Gonzalez, Safari Tours, Inc., Perez-Priego, supra; see also Gov't Emples. Ins. Co. v. Quality Diagnostic Health Care Inc., 2019 U.S. Dist. LEXIS 220674 (S.D. Fla. 2019), aff'd 2021 U.S. App. LEXIS 32949 (11th Cir. 2021)(affirming summary judgment for plaintiff-insurer on unjust enrichment and

declaratory judgment claims, where the defendants had "no legal entitlement" to the insurer's insurance payments).

The Defendants also engaged in deceptive acts and unfair trade practices. In particular, their conduct was deceptive because it was likely to – and did – mislead GEICO into believing that it had an obligation to pay $720,249.18 worth of Glass Services charges, when in fact GEICO had no such obligation. See ECF No. 126-1, ¶ 14. What is more, the Defendants' conduct amounted to unfair practices because it offended established public policy, as set forth in the Repair Act's provisions regarding subcontracting, misleading statements, written estimates, invoices, and odometer readings. Moreover, the Defendants' conduct amounted to unfair practices because it was unscrupulous and substantially injurious to consumers – not only GEICO, but also the GEICO insureds who were led to believe that Glassco would perform the Glass Services, when in fact the Glass Services were subcontracted to unsupervised third-parties without their knowledge or consent.

Accordingly, the District Court should have granted GEICO summary judgment on its FDUTPA claim, as well. See, e.g., State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., 446 F. Supp. 3d 1032, 1055 (S.D. Fla. 2020), aff'd in pertinent part 2022 U.S. App. LEXIS 3745 (11th Cir. 2022)("The repeated submissions, through the concerted transactions and dealings of the Defendants, of what are, at bottom, non-compensable invoices to State Farm, were deceptive practices that the Court finds violate FDUTPA."); State Farm Mut. Auto. Ins. Co. v.

First Care Solution, Inc., 232 F. Supp. 3d 1257, 1268-1269 (S.D. Fla. 2017) (granting summary judgment to plaintiff-insurer on FDUTPA claim, where the facts indicated that the defendant engaged in unfair and deceptive acts and practices by obtaining payment for services that the insurer had a right to deny as unlawfully rendered).

## **CONCLUSION**

For the reasons set forth herein, the District Court should be reversed, together with such other relief as to the Court seems just and proper.

Dated:        April 28, 2023

Respectfully submitted,

*/s/      Max Gershenoff*
Max Gershenoff
Lindsey R. Trowell
John P. Marino
Kristen L. Wenger
RIVKIN RADLER LLP
Riverplace Tower
1301 Riverplace Blvd., Suite 1000
Jacksonville, FL 32207
Phone: 904-792-8948
max.gershenoff@rivkin.com
john.marino@rivkin.com
kristen.wenger@rivkin.com
*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

*Check the appropriate box in section 1, and check the box in section 2.*

**1.    Type-Volume**

X    This document complies with the word limit of FRAP 29(a)(5) because, excluding the parts of the document exempted by FRAP 32(f) and FRAP 32(g) this document contains 12,370 words.

**or**

☐    This brief complies with the line limit of FRAP                    because, excluding the parts of the brief exempted by FRAP 32(f) and                    , this brief uses a monospaced typeface and contains                    lines of text.

**2.    Typeface and Type-Style**

X    This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

Dated:        April 28, 2023

*/s/     Max Gershenoff*
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Kristen L. Wenger (FBN 92136)
RIVKIN RADLER LLP
Riverplace Tower
1301 Riverplace Blvd., Suite 1000
Jacksonville, FL 32207
Phone: 904-792-8948
max.gershenoff@rivkin.com
john.marino@rivkin.com
kristen.wenger@rivkin.com
*Counsel for Appellants*

5796300 v4